**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**WILLIAM McLAIN**                                                                                             **PLAINTIFF**

**vs.**                                          **Civil Action NO. 3:06-cv-00534 HTW-FKB**

**CITY OF RIDGELAND, MISSISSIPPI,**
**and BRYAN MYERS, IN HIS INDIVIDUAL**
**CAPACITY**                                                                                 **DEFENDANTS**

## **MEMORANDUM OPINION AND ORDER**

On July 14, 2006, plaintiff William McLain ("McLain" or "Plaintiff") filed this lawsuit against defendants City of Ridgeland, Mississippi; and Bryan Myers, in his individual capacity, pursuant to Title 28 U.S.C. § 1331[1] and Title 28 U.S.C. § 1343.[2] Plaintiff alleges that Detective Bryan Myers of the City of Ridgeland, Mississippi, Police Department, violated his [McLain's] Fourth[3] and Fourteenth Amendment[4] rights by

---

[1] Title 28 U.S.C. § 1331 provides in pertinent part: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[2] Title 28 U.S.C. § 1343 provides in pertinent part:

    (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

    (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

    (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

    (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

    (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

[3] U.S. Const. Amend. IV provides that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or

intentionally withholding exculpatory evidence which, if revealed, would have occasioned an earlier dismissal of rape charges against McLain and secured McLain's freedom from criminal incarceration. Plaintiff sues Bryan Myers in his individual capacity only. Prior to trial, plaintiff conceded all other claims against Detective Myers and the City of Ridgeland, Mississippi.

On June 8, 2009, this court began the two-day trial of this matter before a duly constituted jury. Once plaintiff rested, however, this court granted defendants' motion for judgment as a matter of law. This court now sets out its findings of fact and conclusions of law, as required by Rule 52 Federal Rules of Civil Procedure.[5]

## I. **Findings of Fact**

On February 21, 2002, Jane Doe[6] reported to the Ridgeland Police Department that she had been raped during the early morning hours of January 6, 2002, at a Ridgeland nightclub called "The Dock." Officer Brad Lewis responded to her report. Jane Doe described her attacker to Officer Lewis as "a young attractive W/M [white male], medium build, 6'2" – 6'3", approx[imately] 180 lbs, dark hair, dark complexion, well dressed (wearing a bright blue long-sleeved dress shirt)." She also produced to the

---

affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[4] U.S. Const. Amend. XIV, § 2 provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[5] Federal Rule of Civil Procedure 52 provides in pertinent part:

> In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.

[6] This court will refer to the sexual assault victim as "Jane Doe."

police a pair of pants she had been wearing that night that she thought might contain semen stains. The underwear she had been wearing at the time of the alleged attack could not be found.

The rape investigation was assigned to Detective Bryan Myers. On February 25, 2002, Detective Myers received a call from Jane Doe, who wanted to give the Detective more information she felt was important to the case. She again recounted to Myers the circumstances surrounding her attack, but gave him a more detailed description of her assailant. The description she gave to Detective Myers of her rapist was that he was "handsome, dark complexion, over 6" tall, dark hair and eyes, possibly of American Indian descent."

Detective Myers testified that Jane Doe's description of the rapist brought to mind plaintiff William McLain. Detective Myers recently had seen plaintiff McLain for the first time at the Ridgeland, Mississippi, Police Department when McLain had been there to meet with another detective in an unrelated matter. Myers opined that McLain matched the description of the rapist given by Jane Doe. Detective Myers testified he also was familiar with McLain's name because McLain had been a suspect in another criminal case.

On February 27, 2002, Detective Myers arranged for Jane Doe to view a six-person photographic line-up. The photographic line-up consisted of mug shots of five individuals from the Madison County, Mississippi, Jail who matched the description Jane Doe had given of her attacker, as well as a photograph of McLain. Jane Doe positively identified the photograph of McLain as being the individual who had raped her, and signed and dated the photograph to confirm her identification.

Detective Myers testified at the federal June, 2009, civil trial, that based on the victim's positive identification of McLain as her rapist, he [Myers] had had sufficient probable cause to arrest McLain back on February 27, 2002, but did not do so. He

testified that in an effort to strengthen the criminal case with some physical evidence, on March 11, 2002, he [Detective Myers] had sent to the Mississippi Crime Laboratory the pants Jane Doe said she had worn the night of the rape. Myers said he was hoping for trace evidence of semen on the pants for possible DNA identification. At the time, the Mississippi Crime Laboratory was suffering from a significant backlog in the processing of evidence in criminal cases.

On May 5, 2003, more than a year after he had submitted Jane Doe's pants for serological examination, Detective Myers received a report from the Mississippi Crime Laboratory. This report confirmed the presence of sperm cells on the pants.

Now armed with both Jane Doe's identification of McLain as her attacker and the availability of DNA evidence, Detective Myers prepared an underlying facts and circumstances narrative and signed an affidavit for an arrest warrant against McLain on the charge of rape pursuant to Miss. Code Ann. § 97-3-68.[7] Detective Myers also

---

[7] Miss. Code Ann. § 97-3-68 provides in pertinent part:

> (1) In any prosecution for rape under section 97-3-65, 97-3-67 or 97-3-71, if evidence of sexual conduct of the complaining witness is offered to attack the credibility of said complaining witness, the following procedure shall be followed:
>
> (a) A written motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness.
>
> (b) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated.
>
> (c) If the court finds that the offer of proof is sufficient, the court shall order a closed hearing in chambers, out of the presence of the jury, if any, and at such closed hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant.
>
> (d) At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the sexual conduct of the complaining witness is relevant and otherwise admissible, the court may make an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.
>
> (2) As used in sections 97-3-68 and 97-3-70, "complaining witness" means the

prepared an underlying facts and circumstances narrative and signed an affidavit for a search warrant against McLain to obtain hair, blood and saliva samples for DNA testing. These were presented by Detective Myers to Ridgeland Municipal Court Judge Harold McCarley. Judge McCarley found probable cause existed and on July 14, 2003, issued an arrest warrant against McLain on the charge of rape. Judge McCarley also issued a search warrant allowing the Ridgeland Police Department to obtain the necessary biological specimens from McLain.

Pursuant to the warrant, on July 15, 2003, Detective Myers thereafter arrested McLain. Detective Myers found McLain in Ridgeland Municipal Court answering a traffic citation. That same day, the search warrant was executed and the requisite blood, hair and saliva samples for DNA testing were collected by a physician. McLain was then transported to the Madison County Mississippi Jail to be held until his initial hearing.

On July 16, 2003, the Ridgeland Police Department submitted the samples taken from McLain to the Mississippi Crime Laboratory for DNA testing. The State Crime Laboratory prepared stain cards of the samples and submitted the samples to Reliagene Technologies, Inc. ("Reliagene"), a Louisiana based DNA testing facility.

McLain had an initial appearance on July 16, 2003, before Judge McCarley. Judge McCarley set a preliminary hearing for July 29, 2003, and set a bond of $100,000.00. On July 29, 2003, McLain was present in court with his attorney for his preliminary hearing and the rape charge against him was bound over to the Madison County Grand Jury. McLain requested a reduction of the $100,000.00 bond, which Judge McCarley denied. McLain remained in the Madison County Jail.

On August 18, 2003, Detective Myers learned from the Mississippi Crime

---

alleged victim of the crime charged, the prosecution of which is subject to this section.

Laboratory that additional samples would be needed for Reliagene to complete the DNA analysis of the samples that had been submitted approximately one month earlier. Detective Myers was told that Reliagene needed samples from the rape victim. Those samples were provided by the rape victim and forwarded to Reliagene.

On September 12, 2003, Reliagene faxed a report to Detective Myers which found that the testing of a sample from Jane Doe's pants was "consistent with the mixture of at least two DNA donors."

The report was inconclusive and stated:

> William McLain is excluded as the major contributor in Reliagene Sample #03-7121-S, however no determination can be made as to the inclusion or exclusion of the suspect William McLain as the minor contributor in Reliagene Sample #03-7121-S. This result may be used for future comparisons with known samples. Further Y-STR testing may be performed on the sample.

Detective Myers testified that he authorized Reliagene to conduct additional testing to determine if McLain was the minor contributor.

Detective Myers presented the rape case against McLain to the Madison County Grand Jury on November 12, 2003. The Grand Jury returned a true bill against McLain on November 12, 2003, although the results of the Grand Jury were not publicly released until December 19, 2003, and not filed until December 23, 2003. Plaintiff testified that he had received the indictment documents at the Madison County Jail in late December 2003.

On November 20, 2003, shortly after the Grand Jury's indictment of McLain, Detective Myers received by facsimile the additional DNA testing results from Reliagene. According to the DNA results, McLain's DNA did not match the samples taken from the rape victim's clothing. Detective Myers informed Jane Doe that the DNA results did not match. Jane Doe maintained her identification of McLain as her attacker. Jane Doe explained that the semen found on her pants could have come

from her husband from a time prior to her rape. She said she would wear the pants repeatedly before laundering them.

Detective Myers then concluded that he needed the DNA profile of Jane Doe's husband. Additional testing, utilizing samples from Jane Doe's husband, was then ordered.

Detective Myers related the results of the DNA testing to Ridgeland Police Chief Jimmy Houston. Chief Houston told Detective Myers to call the District Attorney's Office and advise them of the situation and to advise them that McLain needed to be released while the additional DNA testing proceeded.

At the federal civil trial, Detective Myers testified that he relayed the information to then Madison County Assistant District Attorney Brad Wilkinson, who was assigned to the McLain rape case. During the federal civil trial, plaintiff's counsel represented to the court that Detective Myers previously had testified in his deposition that he had talked to Assistant District Attorney Scott Rogillio. Rogillio did not begin working at the District Attorney's Office until January 5, 2004, and could not have been the individual to whom Detective Myers had relayed the DNA results. Plaintiff's counsel trumpets this as a fact question on credibility, whether Detective Myers had changed his story for trial. Despite plaintiff's counsel's representations as to what Detective Myers had said in his deposition, an examination of the deposition transcript shows that Detective Myers in his deposition had testified as follows:

> Q: What did you tell the district attorney, and who was the district attorney?
>
> A: I want to say it was Scott Rogillio. I don't remember.

As such, Detective Myers' deposition testimony clearly stated he did not remember to whom he had spoken. Further, at the federal civil trial, Detective Myers testified that he was now aware that it could not have been Rogillio and he had been confused because this was during the general period when the administration and attorneys in the

7

Madison County District Attorney's Office had changed.

On January 5, 2004, newly elected Madison County District Attorney David Clark assumed control of the Madison County District Attorney's Office, and new Assistant District Attorneys became responsible for the pending criminal cases from the previous administration. Brad Wilkinson, who previously had handled the McLain case had left the office, along with other Assistant District Attorneys employed by the prior District Attorney, Rick Mitchell.

The new Assistant District Attorney assigned to the McLain case was Thomas Kesler, who also began his employment on January 5, 2004. He was assigned between 150 and 200 existing criminal cases. At trial, Kesler testified that because of political issues, no transition and absolutely no exchange of information as to criminal cases from the outgoing to the incoming administrations had occurred. Kesler testified that he never spoke with Brad Wilkinson about the McLain case or about any other case and had no knowledge as to what Detective Myers previously had told Brad Wilkinson about the DNA results in the McLain case. Kesler testified that Detective Myers had nothing to do with the lack of communication between the outgoing and incoming administrations of the Madison County District Attorney's Office. Detective Myers testified he had no reason to believe that the information he had relayed to Wilkinson had not been communicated to the new administration.

Kesler testified his only knowledge of the McLain case was gleaned from reading what there was in the District Attorney's file from the previous administration. He was aware that DNA testing had been ordered. In a letter dated January 28, 2004, Kesler sent a letter to Detective Myers in regard to the criminal charge against McLain. The body of the letter reads as follows:

> Detective Myers, I have been assigned the captioned case. I have reviewed the file in our possession and have some questions. Would you let me know a convenient time when I could meet with you in your office to discuss this case next

week between February 3, and February 6?

Detective Myers responded to the letter from Kesler by e-mail on the morning of January 29, 2004, as follows:

> Tom: Please accept this e-mail as receipt of your letter in reference to McLain. I am awaiting the last round of DNA testing in this case. Reliagene has always met their deadline and we should hear something in the next week or so. We have municipal court on Tuesday of every week, 03/04/2004 would be an opportune time for a meeting. If that is not a good day for your schedule, please advise.[8]

Kessler replied to the e-mail later that same day as follows: "No need to wait until the DNA test comes back. That was the principal question. Just let me know when it does."

At trial, Kesler testified that at the time he responded to the e-mail, he was unaware of what particular DNA testing to which Detective Myers was referring in the e-mail. Detective Myers testified that he assumed that Kesler knew about the November 20, 2003, results that he had previously relayed to Brad Wilkinson.

Kesler testified at trial, that in reviewing the McLain case file in January 2004, he believed that probable cause still existed to hold McLain on the rape charge, based on the victim's positive and un-recanted identification of McLain as her rapist. Kesler further testified that once McLain was indicted by the Madison County Grand Jury, Detective Myers had absolutely no authority to have McLain released or to have any charges dropped. That authority rested entirely with the Madison County District Attorney's Office and the Madison County Circuit Court Judge assigned to the case.

On February 6, 2004, Detective Myers received Reliagene's report stating that Mr. Doe's DNA did not match the sample taken from Jane Doe's pants.

Detective Myers contacted his immediate supervisor, Ridgeland Police

---

[8] At trial, Dectective Myers testified that the date in his email, "03/004/2004," was a typing error. The intended date was "02/04/2004."

Lieutenant Randy Tyler, who advised him to contact Ridgeland Police Chief Jimmy Houston immediately about Reliagene's findings. Chief Houston instructed Detective Myers to contact Scott Rogillio in the Madison County District Attorney's Office and Detective Myers subsequently advised Rogillio about the findings from Reliagene.

That same day, on February 6, 2004, McLain was released from the Madison County Jail on a reduced posted bond of $50,000.00. On July 23, 2004, the Madison County District Attorney's Office requested the Madison County Circuit Court to *Nolle Prosequi* the indictment against McLain. The Motion was granted that same day by Circuit Judge Samac Richardson.

## II. **Conclusions of Law**

### A. **Jurisprudence On Fourth And Fourteenth Amendments**

In determining whether there has been a constitutional violation, the standard to be applied by the court corresponds with an analysis of plaintiff's Fourth and Fourteenth amendment claims. The Fourth and Fourteenth Amendments guard against arrest without probable cause. *Hand v. Gary*, 838 F.2d 1420 (5th Cir. 1988). "Whether an arrest is illegal, however, hinges on the absence of probable cause." *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998); *Baker v. McCollan*, 443 U.S. 137, 144-45 (1979). Arrests made pursuant to valid arrest warrants are constitutional. *Rodriguez v. Ritchey*, 556 F.2d 1185, 1190-1191 (5th Cir. 1977). "Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." *U.S. v. Bustamante-Saenz*, 894 F.2d 114, 118 (5th Cir. 1990). The probable cause requirement does not "demand any showing that such a belief is correct or more likely true than false." *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985). If plaintiff cannot show violation of a constitutional right by Detective Myers, there is no liability, and the inquiry is over. *Price v. Roark*, 256 F.3d 364, 369 (5th Cir.

2001).

### B. Rule 50 Standard

Rule 50 of the Federal Rules of Civil Procedure sets forth the standard for granting judgment as a matter of law:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.... In ruling on a renewed motion, the court may ... allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law.

FED.R.CIV.P. 50.

In applying this standard, the court must consider all of the evidence in the light most favorable to the non-movant, drawing all reasonable factual inferences in that party's favor, and leave credibility determinations and the weighing of evidence to the jury. *McCrary v. El Paso Energy Holdings, Inc.*, 209 F.Supp.2d 649, 651 (N. D. Miss. 2002) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50, 120 S.Ct. 2097, 2110 (2000)). The court should grant a motion for judgment as a matter of law only when "the facts and inferences point so strongly and overwhelmingly in favor of [the moving] party that the court believes that reasonable [jurors] could not arrive at a contrary verdict." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969).

### C. Probable Cause to Arrest

As an initial point, the court finds as a matter of law that Detective Myers had probable cause to arrest McLain on the charge of rape, based on the positive identification by Jane Doe. The Fifth Circuit has held that a positive identification by a crime victim provides law enforcement with probable cause for arrest. *Waller v. U.S.*, 2004 WL 1240486, *1 (5th Cir. June 2, 2004). In *Waller*, a bank teller who was the victim of an attempted armed robbery was, as in the instant case, presented a

11

photographic line-up of six men, including the arrestee. *Id.* The bank teller positively identified the arrestee as the armed robber, which the Fifth Circuit held supplied probable cause. Other jurisdictions are in accord. *See Daniels v. U.S.,* 393 F.2d 359, 361 (D.C.Cir. 1968) (officers have probable cause to arrest if they have "information from some person - normally the putative victim or eyewitness – who it seems reasonable to believe is telling the truth."); *Miloslavsky v. AES Eng'g Soc'y Inc.,* 808 F.Supp. 351, 355 (S.D.N.Y. 1992), *Aff'd,* 993 F.2d 1534 (2d Cir.), *cert. denied,* 510 U.S. 817, 114 S.Ct. 68 (1993) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed.").

The undisputed fact that the police arrested McLain pursuant to a valid warrant issued by a municipal judge also establishes the existence of probable cause to arrest. *See Simons v. Clemons*, 752 F.2d 1053, 1054-55 (5th Cir. 1985) (plaintiff who alleged she had been illegally arrested and detained failed to allege any constitutional deprivation because she had been arrested on a facially valid warrant).

The Madison County Grand Jury's subsequent indictment of McLain on the charge of rape affirmed the pre-existing determination of probable cause. *See Giordenello v. United States,* 357 U.S. 480, 487, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958) (grand jury indictment establishes probable cause); *Campbell v. City of San Antonio,* 43 F.3d 973, 976 (5th Cir.1995) (noting that an arrest warrant may be based on a grand jury indictment which establishes probable cause). From the evidence presented at trial, it is undisputed that at the time of the November 12, 2002, presentation of the case to the Grand Jury, the DNA results of November 20, 2003, which excluded McLain as the source of the semen stains on Jane Doe's pants, had not yet been received by Detective Myers. Accordingly, this court holds, as a matter of law, probable cause continued to exist through the latter part of December 2003.

During trial, plaintiff called former Madison County Assistant District Attorney

Thomas Kesler as a witness. Kesler testified that as of the time of his January 28, 2004, letter to Detective Myers, he had reviewed the McLain file and believed that probable cause still existed as to the rape charge against McLain, based on the positive and un-recanted identification of McLain by Jane Doe. He also testified he did not see any need to take any action until the final DNA results were received.

Detective Myers testified that he had received the final DNA results from Reliagene on or about February 6, 2004, which excluded Jane Doe's husband as the source of the semen stains on the pants. It is undisputed from the evidence that Detective Myers was instructed by Police Chief Houston to contact the Madison County District Attorney's Office regarding the DNA results, and Detective Myers contacted Assistant District Attorney Scott Rogillio. Mclain was released on bond that same day. The court finds as a matter of law, that to the extent there was any dissipation or diminishment of probable cause, it did not occur until February 6, 2004, at which time McLain was released on bond from the Madison County Jail.

### D. Deliberate Concealment

To prevail in his claim against defendant, plaintiff bore the burden of proving that Defendant Myers deliberately and intentionally concealed and withheld evidence from the Madison County District Attorney's Office, which cleared or tended to clear him and that would have resulted in plaintiff's release from jail. *See Sanders v. English*, 950 F.2d 1152, 1162-64 (5th Cir. 1992). The particular evidence identified by plaintiff at trial was the November 20, 2003, DNA results, excluding McLain as the source of the semen stains on the pants. Plaintiff argued during the Rule 50 motion that this evidence was not only exculpatory, but actually established McLain's innocence, without regard to the victim's positive identification.[9]

---

[9] Plaintiff's guilt or innocence is irrelevant for purposes of this motion. The court, however, takes issue with plaintiff's claim that the November 20, 2003, DNA results established McLain's innocence. Indeed, as one federal court has recognized, "the DNA results do nothing

During trial, Detective Myers presented his testimony and his contemporaneous notes showing that he had informed the Madison County District Attorney's Office on the very same day he had received the November 20, 2004, results. Plaintiff presented absolutely no evidence contradicting or disproving Detective Myer's statements. To the contrary, plaintiff's witness, Thomas Kesler, established that the total lack of communication between the outgoing and incoming administrations of the Madison County District Attorney's Office was the real reason that information regarding the DNA evidence had not been institutionally shared.

Detective Myers played no role in this lack of communication and had no knowledge that his earlier communications with Brad Wilkinson were not known to Thomas Kesler. This was amply demonstrated in the mail and e-mail exchanges between Kesler and Detective Myers in late January 2004. Kesler was unaware of what DNA testing had been done. Myers assumed Kesler was aware of the prior November 20, 2003, results and understood that the "last round of DNA testing" referred to the testing of Jane Doe's husband as to the unidentified stains on the pants. Consequently, this court holds as a matter of law that if Myers withheld any information from Kesler, it was due, at the very worst, to negligence. In a § 1983[10] suit, the plaintiff

---

to discount a number of other possible scenarios reasonably implicating [the suspect] in the sexual assault: [suspect's] sperm might have been present on a different, untested sample; [suspect raped [Ms. Doe] but did not ejaculate." *Hunt v. McDade,* 205 F.3d 1333, *3 (4th Cir. 2000). In this case, the November 12, 2003, DNA results only established that McLain was not the source of the stains on the outside of Jane Doe's pants.

[10] The court analyzes this Title 28 U.S.C. § 1343 matter under the guise of Title 42 U.S.C. § 1983 and determines that the thrust of the two for these purposes are analogous.

Title 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be

must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (*en banc*). Therefore, this court finds that plaintiff did not meet his burden of offering evidence that Myers intentionally had withheld exculpatory evidence from Kesler.

## IV. CONCLUSION

In sum, the court finds that the undisputed facts in the case point so strongly and overwhelmingly in favor of defendant that the court believes that reasonable jurors could not arrive at a verdict for plaintiff. Accordingly, the court grants defendant's Rule 50 motion and dismisses plaintiff's suit against defendant with prejudice.

**SO ORDERED AND ADJUDGED, this the 28th day of February, 2010.**

**s/ HENRY T. WINGATE**

_____
**CHIEF JUDGE
UNITED STATES DISTRICT COURT**


Civil Action No. 3:06-cv-00534 HTW-FKB
Memorandum Opinion and Order

---

granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.